THOMAS H. TINSLEY ET AL., APPELLEES, v. CITY OF OMAHA ET AL., APPELLANTS.

208 N. W. 2d 693

Filed June 22, 1973. No. 38810.

Herbert M. Fitle and James E. Fellows, for appellants.

Arthur D. O'Leary of McGrath, North, Nelson, Dwyer & O'Leary, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

SMITH, J.

The public safety director of Omaha suspended two officers from the police force 30 days for improper handling of a prisoner. On appeal and after an evidentiary hearing, decisions of the personnel board affirmed the suspension orders as modified by decreases of the duration to 15 days. On error proceedings brought by the officers, the District Court reversed the decisions of the personnel board and ordered reimbursement of the officers for pay and allowances. The city and the personnel board appeal.

During the afternoon of February 6, 1971, the officers, E. Paul Stone and Thomas H. Tinsley, received a call

that a man was threatening violence in order to see his children at 4003 Cuming Street. Arriving at that address, they saw a man sitting in the driver's seat of a Pontiac automobile parked in front of the address. After having parked and left their police cruiser, however, the officers discovered that the man was no longer visible to them. The man, Allen Harris, was found lying intoxicated on the front seat. The Pontiac was locked, and the officers were ignored by Harris. The officers eventually removed Harris, who in their opinion continued mostly to ignore them. According to D. B. Chase, an off-duty officer watching the arrest, Harris appeared belligerent and refused to leave the Pontiac. After his removal from the automobile, Harris appeared to struggle momentarily with both Stone and Tinsley, who began to handcuff him. He twice pulled his hand away from Tinsley, but the officers finally handcuffed his hands behind his back. The argument, according to Chase, continued.

A report dated February 7, 1971, and signed by Stone and Tinsley reads: "Re: Reporting officers knowledge of HARRIS' involvement in the threat call at 4003 Cuming St. On 6 SAT. 71, after receiving the threat call . . ., Officer TINSLEY advised officer STONE that he had received a phone call approximately one week prior to 6 FEB. 71 concerning some difficulty at 4003 Cuming St. The call came from a Dr. Ellerbrock, Nebr. Psych. Inst. and the information was that a man, possibly drunk and in a poor mental condition was enroute to 4003 Cuming St. and had threatened to kill his family.

"Due to the close proximate of HARRIS' position in relation to the call plus the fact that he made an attempt to hide from the arresting officers by laying down in his seat, STONE & TINSLEY decided to check HARRIS before going into the house. HARRIS' name was first determined from a Nebr. In-Transit tag found in the rear window of his 65 Pont. The name on the tag was Allen HARRIS . . .. This tag was checked before any conversation was had with HARRIS."

During transportation of Harris in the police cruiser to central police station, he calumniated the officers in obscene language. Inside the police garage, the cruiser was parked 50 feet from a doorway through which Harris was to be taken. Stone placed his briefcase, which contained his nightstick and other paraphernalia, on the trunk of the cruiser. Harris was removed from the cruiser without incident and escorted by Stone to the door. Since it was time for a shift of personnel, Tinsley followed, 6 steps behind, carrying the officers' briefcases and his nightstick under his arm.

When Stone and Harris arrived at a heavy-gauge steel door that led to a 6 by 10 feet alcove next to the elevator, Stone began to open the door. Harris, age 27, height 69 inches, and weight 160 pounds, then pulled away from Stone and fell, his face striking a wall. Tinsley caught up with them. Harris kicked both officers, tripped Stone, and proceeded to kick Stone numerous times on the legs. With his fist, Stone struck Harris twice near the left ear. The blows caused shallow tears of the skin, 10 millimeters long on the mastoid process behind the ear. In the scuffle Tinsley only struck one blow with his nightstick and that on Harris' leg below the knee. Harris lost consciousness. His blood alcohol test was .25 percent.

The Omaha chief of police, Richard Andersen, in his testimony before the board, read his report, which states in part as follows: "Instead of both officers maintaining the custody and balance of a handcuffed prisoner from the car to the booking area . . . Stone went on ahead with the prisoner while . . . Tinsley stayed with the car . . . to get the equipment out of it so they could, apparently, check out of their tour of duty. . . . (I)f both officers had stayed with . . . Harris, on into the elevator and into the booking area, the incident very probably would not have occurred. The fact that a person is handcuffed means that he has no balancing capacities or they are very limited; and, if he does go off bal-

ance, he has no way of catching himself to prevent injury so, therefore, the custodial responsibility of officers is extremely high with a handcuffed person, particularly one in an intoxicated condition . . ..

"(T)he striking with a fist would not defend an officer from a handcuffed person lying on the floor kicking. It would certainly not be done to defend the person of another as there were no other parties present."

The departmental rules that the officers allegedly violated read in part as follows: "No officer . . . shall abuse . . . any person in his custody . . . during the performance of his duty. He shall use only such force as may be reasonably necessary to effect an arrest, to defend his person, or to defend the person of another. Any arresting officer assumes full responsibility for an arrested person . . . upon taking him in custody."

Where it appears in an error proceeding that an administrative tribunal has acted within its jurisdiction and for that type of proceeding some competent evidence sustains its findings and order, the order of the administrative agency will be affirmed. Hartnett v. City of Omaha, 188 Neb. 449, 197 N. W. 2d 375 (1972); Lynch v. City of Omaha, 153 Neb. 147, 43 N. W. 2d 589 (1950); Mathews v. Hedlund, 82 Neb. 825, 119 N. W. 17 (1908).

The judgment of the District Court in the error proceeding was prejudicially erroneous. It is reversed and the cause remanded with directions to affirm both decisions of the personnel board.

REVERSED AND REMANDED WITH DIRECTIONS.